# EXHIBIT 2



12/19/2017

Insured:  Calistoga Ranch
Company: Certain Underwriter's at Lloyd's, London
Policy #:  PGIARK08070-00
Policy Period:  11/15/2017-11/15/2020

Monique Podvojsky
Beecher Carlson
1500 Broadway 21st Floor
New York, NY 10036


Re:  Calistoga Ranch


Dear Monique

Please find the enclosed policy(s) for the above named insured.  Please review for accuracy and inform our office of any changes that may be necessary.

If you have any questions please do not hesitate to call your underwriter.




Sincerely,



Toni White

# LLOYD'S

Insurance is effective with certain
UNDERWRITERS AT LLOYD'S LONDON
INTERNATIONAL INSURANCE COMPANY OF HANNOVER SE

## UNIQUE MARKET REFERENCES:

B6049B0117GA00012 - 50%      B0180PN1700336 - 35%      01/Dual-PL-EL/2017 - 15%

## SITE POLLUTION LIABILITY – CLAIMS MADE FORM

## PLEASE READ THE ENTIRE FORM CAREFULLY

**POLICY NUMBER:**   PGIARK08070-00                **RENEWAL OF:**   New

**COMPANY:**   Certain Underwriter's at Lloyd's, London
INTERNATIONAL INSURANCE COMPANY OF HANNOVER SE

1. **NAMED INSURED:**      Calistoga Ranch
   **MAILING ADDRESS:**   580 Lommel Road
   Calistoga, CA  94515

2. **POLICY PERIOD:**   a. Inception Date:   11/15/2017      b. Expiration Date:   11/15/2020
   at 12:01 A.M.  Standard Time at your mailing address shown above.

3. **LIMITS OF LIABILITY:**
   Site Pollution Liability
   | | |
   |---|---|
   | Each Pollution Condition: | $3,000,000 |
   | General Aggregate: | $5,000,000 |

4. **DEDUCTIBLE:**

   | | |
   |---|---|
   | Site Pollution Liability | $25,000  per Claim |

5. **PREMIUM:**      Policy Term Premium                        $
   Minimum Earned Premium                   $
   U.S. Terrorism Risk Insurance Act of 2002   $

6. **RETROACTIVE DATE:**
   Site Pollution Liability  -  November 15, 2014

7. **COVERED SITE(S):**
   Oly Calastoga Ranch, 570 & 580 Lommel Road, Napa Valley, CA 94515

8. **NOTICE OF CLAIM TO:**      **Premier Claims Management, LLC.**
   **2020B North Tustin Ave.**
   **Santa Ana, California 92705**
   **Tel: 888-683-2266  Fax: 866-885-4047**
   **Email: 'mbonetati@premierclaimsllc.com'**

9. **NOTICE OF ELECTION TO:**      DUAL Commercial LLC
   Marlton Executive Park, 701 Rte. 73 S., Bldg. #2, Ste 105
   Marlton, NJ 08053

**FORMS AND ENDORSEMENTS ATTACHED
AT INCEPTION:**                        See Schedule of Forms

**THESE DECLARATIONS TOGETHER WITH THE APPLICATION, FORMS AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE, THE ABOVE NUMBERED POLICY.**

12/19/2017
(Date)                                            (Authorized Representative)

**Named Insured:**   Calistoga Ranch

**Policy Number:**   PGIARK08070-00

# Schedule of Participating Underwriters

## Lloyd's Underwriters

| Syndicate Number | Pseudonym | Participation |
|:---:|:---:|:---:|
| 4020 | ARK | 50.000% |
| 1458 | RNR | 18.550% |
| 1084 | CSL | 11.025% |
| 2001 | AML | 5.425% |
| International Insurance Company of Hannover SE | | 15.000% |

# Schedule of Forms

Named Insured   Calistoga Ranch

Policy No:   PGIARK08070-00        Certain Underwriter's at Lloyd's, London - 1328

| Form Name | Form Edition No |
| --- | --- |
| Declaration Page | PGI EL 001 0216 |
| Schedule of Participating Underwriters | Lloyd's UW 016 |
| Schedule of Forms | PGI EL 041 0210 |
| Several Liability Notice | LSW 1001 |
| A Lloyd's Privacy Policy Statement | LSW1135b |
| Cancellation Clause | NMA1331 0461 |
| Service of Suit Clause (USA) | NMA1998 |
| War and Terrorism Exclusion | NMA2918 |
| War & Civil War Exclusion Clause | NMA464 |
| Nuclear Incident Exclusion Clause | NMA1256 |
| Radioactive Contamination Exclusion Clause-Liability-Direct (U.S.A.) | NMA1477 |
| U.S. Terrorism Risk Insurance Act of 2002 as amended - New & Renewal Business Endorsement | LMA5218 |
| Common Policy Conditions | PGI EL 036 0210 |
| Mold, Mildew and Fungus Deductible | PGI EL 031 0210 |
| Sanction Limitation and Exclusion Clause | LMA3100 |
| Governmental Mandate Endorsement | PGI EL 029 0210 |
| Intended Use Endorsement | PGI EL 034 0210 |
| Site Pollution Liability Coverage Form | PGI EL 026 0210 |
| Transportation Of Cargo – Pollution Endorsement | PGI EL 039 1017 |
| Designation of Surplus Lines Agent | PGI PL 002 |
| Reliance Upon Other Carrier's Application | PGI EL 042 1010 |
| TCPA Exclusion | PGI PL 074 1212 |
| Non-Owned Disposal Site Liability Coverage Endorsement (Blanket) | PGI EL 055 0915 |
| Underwriters Endorsement | |

## **SEVERAL LIABILITY NOTICE**

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions.  The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

LSW 1001 (Insurance) 08/94

# LLOYD'S PRIVACY POLICY STATEMENT

## UNDERWRITERS AT LLOYD'S, LONDON

The Certain Underwriters at Lloyd's, London want you to know how we protect the confidentiality of your non-public personal information.  We want you to know how and why we use and disclose the information that we have about you.  The following describes our policies and practices for securing the privacy of our current and former customers.

## INFORMATION WE COLLECT

The non-public personal information that we collect about you includes, but is not limited to:

- Information contained in applications or other forms that you submit to us, such as name, address, and social security number

- Information about your transactions with our affiliates or other third-parties, such as balances and payment history

- Information we receive from a consumer-reporting agency, such as credit-worthiness or credit history

## INFORMATION WE DISCLOSE

We disclose the information that we have when it is necessary to provide our products and services.  We may also disclose information when the law requires or permits us to do so.

## CONFIDENTIALITY AND SECURITY

Only our employees and others who need the information to service your account have access to your personal information.  We have measures in place to secure our paper files and computer systems.

## <u>RIGHT TO ACCESS OR CORRECT YOUR PERSONAL INFORMATION</u>

**You have a right to request access to or correction of your personal information that is in our possession.**

## CONTACTING US

If you have any questions about this privacy notice or would like to learn more about how we protect your privacy, please contact the agent or broker who handled this insurance.  We can provide a more detailed statement of our privacy practices upon request.

06/03
LSW1135B

## CANCELLATION CLAUSE

NOTWITHSTANDING anything contained in this Insurance to the contrary this Insurance may be cancelled by the Assured at any time by written notice or by surrendering of this Contract of Insurance. This Insurance may also be cancelled by or on behalf of the Underwriters by delivering to the Assured or by mailing to the Assured, by registered, certified or other first class mail, at the Assured's address as shown in this Insurance, written notice stating when, not less than 30 days thereafter, the cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice.

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the Earned Premium hereon or the customary short rate proportion of any Minimum Premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the Earned Premium hereon or the pro rata proportion of any Minimum Premium stipulated herein whichever is the greater.

Payment or tender of any Unearned Premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

20/4/61
NMA1331

## <u>SERVICE OF SUIT CLAUSE (U.S.A.)</u>

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.  It is further agreed that service of process in such suit may be made upon:-

Mendes and Mount
750 Seventh Avenue
New York
New York 10019-6829
United States of America

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

24/4/86
NMA1998

**WAR AND TERRORISM EXCLUSION ENDORSEMENT**

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

(1)   war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

(2)   any act of terrorism.
For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to (1) and/or (2) above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

NMA2918
08/10/2001

**WAR AND CIVIL WAR EXCLUSION CLAUSE**

(Approved by Lloyd's Underwriters' Non-Marine Association)

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

1/1/38
NMA 464

**NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)**

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

> Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.     Under any Liability Coverage, to injury, sickness, disease, death or destruction:

    (a)   with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b)   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.    Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

    (a)   the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

    (b)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c)   the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.    As used in this endorsement:

> "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component,

solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

(a)   any nuclear reactor,

(b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
NMA1256

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)**

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
NMA1477

**U.S. Terrorism Risk Insurance Act of 2002 as amended**
**New & Renewal Business Endorsement**

*This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended, as summarized in the disclosure notice.*

In consideration of an additional premium of USD <u>Refer to Declarations</u> paid, it is hereby noted and agreed with effect from inception that the Terrorism exclusion to which this Insurance is subject, shall not apply to any "insured loss" directly resulting from any "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the type insured by this Insurance directly resulting from an "act of terrorism" as defined in TRIA.  The coverage provided by this Endorsement shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.  The Terrorism exclusion, to which this Insurance is subject, applies in full force and effect to any other losses and any act or events that are not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject.  All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on the Underwriter's liability for payment for terrorism losses.

LMA5218
12 January 2015

**COMMON POLICY CONDITIONS ENDORSEMENT**

This endorsement changes the Policy.  Please read it carefully.

In consideration of the premium charged, and notwithstanding anything contained in this policy to the contrary, it is hereby agreed that all coverage parts included in this policy are subject to the following conditions:

**A.     CANCELLATION**

The *named insured* may cancel this policy by mailing to the Company written notice stating when thereafter such cancellation shall become effective. The Company may cancel this policy by mailing to the *named insured*, at the mailing address specified the Declarations, written notice stating when not less than thirty (30) days thereafter such cancellation shall become effective, except in the event of the *named insured's* nonpayment of premium, not less than ten (10) days advance notice of cancellation shall be given. The mailing of notice as aforesaid, shall be sufficient proof of either party's intent to cancel. The effective date of cancellation specified in such notice shall terminate this *policy period*.  Delivery of such notice shall be equivalent to mailing.

If the *named insured* cancels, the earned premium shall be computed in accordance with the customary short rate table. If the Company cancels, the earned premium shall be computed pro rata. The Company will tender any return premium subject to retaining a minimum earned premium equal to 25% of the amount specified in the Declarations.

Premium adjustment may be made either at the time cancellation is effective or as soon as practicable thereafter, but tender of the unearned premium or return of this policy, shall not be conditions precedent to cancellation hereunder.

**B.     CHANGES**

No provision of this policy may be amended, waived or otherwise changed, except by endorsement hereto.

**C.     EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three (3) years afterward.

**D.     INSPECTIONS AND SURVEYS**

We have the right, but are not obliged to:

**1.**     Make inspections and surveys at any time; and

**2.** Give you reports on the conditions we find; and

**3.** Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

**1.** Are safe or healthful; or

**2.** Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service, engineering firm or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E.** **NAMED INSURED AS AGENT**
The *named insured* specified in the Declarations shall be deemed agent of each *insured* with respect to all matters involving this policy, however, the Company shall have the right to seek indemnification from any *insured* or any other person who may be legally liable for the debts of the *named insured*.

**F.** **PREMIUMS**

The first *Named Insured* shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay; and

**3.** Is responsible for the payment of all deductibles and self-insured retention amounts under this policy.

**G.** **ADDITIONAL PREMIUMS**

If, during this *policy period*, an increase in the risk or hazards covered hereunder occurs, the Company shall have the right to charge the appropriate additional premium.

**H.** **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual *Named Insured*.  If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

I.        **BANKRUPTCY**

Bankruptcy or insolvency of the *insured* or of the *insured's* estate will not relieve us of our obligations under this Coverage Part.

**MOLD, MILDEW AND FUNGUS DEDUCTIBLE ENDORSEMENT**

This endorsement changes the Policy.  Please read it carefully.

| |
|---|
| Deductible  $ 25,000.00 |

In consideration of the premium charged, and notwithstanding anything contained in this policy to the contrary, it is hereby agreed that such coverage as is afforded by this policy shall be subject to a Deductible shown above applicable to each **pollution condition** arising directly or indirectly out of, or in concurrence with actual, alleged or threatened existence, growth, spread, proliferation, discharge, dispersal, seepage, release or escape of any form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

## Sanction Limitation and Exclusion Clause

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100
15 September 2010

**GOVERNMENTAL MANDATE ENDORSEMENT**

This endorsement changes the Policy.  Please read it carefully.

In consideration of the premium charged, it is hereby agreed that the Pollution Liability Coverage Form, I. Insuring Agreements, Coverage A – Onsite Cleanup, paragraph 1. is deleted in its entirety and replaced by the following:

1.  The Company will pay **cleanup costs** that result from **governmental mandate(s)** upon you, but the amount the Company will pay is limited as described in Limit of Liability and Deductible (Section VI).

It is further agreed that the following definition is added to the policy with respect to this endorsement:

**Governmental mandate(s)** means a directive, order or requirement of the government of the United States or any of its states, or Canada or any of its provinces, political subdivisions, or court order duly acting under the authority of environmental or related laws to cleanup, remediate, or mitigate any **pollution conditions** at, on, or under the insured's **site(s)** to which this insurance applies.

**INTENDED USE ENDORSEMENT**

---

This endorsement changes the Policy.  Please read it carefully.

It is hereby agreed that the expected and planned use of the site(s) during the policy period is:

Hospitality Operations, Residences, and Vineyard

If at any time during the policy period the insured shall become aware of any changes in the expected and planned use of the site they are required to notify us within thirty (30) days of such change.  Upon receipt of such notification, the Company reserves the right to modify the terms and conditions of the policy.

# Site Pollution Liability Policy

THIS POLICY APPLIES ONLY TO POLLUTION CONDITIONS DISCOVERED, OR CLAIMS FIRST MADE AND REPORTED, DURING THE POLICY PERIOD.  UNLESS OTHERWISE PROVIDED BY ENDORSEMENT, COSTS, CHARGES AND EXPENSES OF DEFENSE WILL BE PART OF, AND INCLUDED WITHIN, THE APPLICABLE LIMITS OF LIABILITY.  COVERAGE UNDER THIS POLICY MAY DIFFER FROM THE COVERAGES AFFORDED UNDER OTHER POLICIES THE INSURED MAY HAVE PURCHASED.  THE WORD "INSURED" MEANS ANY PERSON OR ORGANIZATION QUALIFYING AS SUCH UNDER "WHO IS AN INSURED" (SECTION III).  OTHER TERMS IN BOLD FACE TYPE ARE DEFINED TERMS WITH SPECIFIC MEANINGS SET FORTH IN THE POLICY.  PLEASE READ THE POLICY CAREFULLY.

In consideration of the payment of the premium and in reliance upon the statements in the Application, and subject to all the terms, conditions, and limitations hereof and any endorsements hereto, the Company agrees with the **Named Insured** as follows:

**I.      INSURING AGREEMENTS**

**Coverage A – Onsite Cleanup**

1) The Company will pay **cleanup costs** that result from **pollution conditions** at, on, or under the Insured's **site(s)** to which this insurance applies, but the amount the Company will pay is limited as described in LIMITS OF LIABILITY AND DEDUCTIBLE (SECTION VI).

2) This insurance applies to **cleanup costs** that result from **pollution conditions** only if:

   a) The **cleanup costs** are caused by **pollution conditions** which take place in the **coverage territory**; and

   b) The **pollution conditions** commence after the Retroactive Date shown in the Declarations, if any, and before the end of the **policy period**; and

   c) The request for payment of **cleanup costs** is first made by the Insured, in accordance with paragraph 3. below, during the **policy period**.

3) A request for payment of **cleanup costs** by the Insured or someone legally representing the Insured will be deemed to have been made when the **pollution conditions** are first discovered by the Insured and reported to the Company during the **policy period**.

**Coverage B – Third Party Claims**

1) The Company will pay on behalf of the Insured those sums that the Insured becomes legally obligated to pay as damages from **claims** for **bodily injury** or **property damage** that result from **pollution conditions** at, on, under or migrating from the Insured's **site(s)** to which this insurance applies.  The Company will have the right and duty to defend the Insured against any **suit** seeking those damages.  However, the Company will have no duty to defend the Insured against any **suit** seeking damages for **bodily injury** or **property damage** that result from **pollution conditions** at, on, under or migrating from the Insured's **site(s)** to which this insurance does not apply.  The Company may, at its discretion, investigate any **pollution condition** and settle any **claim** or **suit** that may result.  But:

   a) The amount the Company will pay for damages is limited as described in LIMITS OF LIABILITY AND DEDUCTIBLE (SECTION VI); and

b) The Company's right and duty to defend end when the Company has exhausted the applicable limit of liability by the payment of judgments, settlements, or expenses under all Insuring Agreements or by the payment of any Defense expense which reduce the limits of liability.

2) This insurance applies to **claims** that result from **pollution conditions** only if:

a) The **pollution conditions** take place in the **coverage territory**; and

b) The **pollution conditions** commence after the Retroactive Date shown in the Declarations, if any, and before the end of the **policy period**; and

c) The **claim** is first made against an Insured (in accordance with paragraph 3. below) and reported to the Company during the **policy period** or any Extended Reporting Period.

3) A **claim** by a person or organization seeking damages will be deemed to have been made at the earlier of the following:

a) When written notice of such **claim** is received by the Insured; or

b) When the Company settles a **claim** in accordance with paragraph 1. above.

All **claims** for damages to the same person, including damages claimed by any person or organization for care, loss of services or death resulting at any time, will be deemed to have been made at the time the first of those **claims** is made against any Insured.

**Coverage C – Defense Expense**

The Company will pay, with respect to any **claim** we investigate or settle, or any **suit** against an Insured we defend:

1) All expenses the Company incurs, including but not limited to expenses incurred pursuant to its rights and duties to investigate, settle and defend **claims** and **suits**.

2) All reasonable expenses incurred by the Insured at the Company's request to assist the Company in the investigation or defense of the **claim** or **suit**, including actual loss of earnings up to $250 a day because of time off from work to attend any trial, deposition, or interrogatory at which the Company has requested the Insured's attendance, or at which such attendance is required by the court.

3) All costs taxed against the Insured in the **suit**.

4) Prejudgment interest awarded against the Insured on that part of a judgment the Company pays.  If the Company makes an offer to pay the applicable limit of insurance, the Company will not pay any prejudgment interest based on that period of time after the offer.

5) All interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of the insurance.

These payments will reduce the limits of insurance shown in the Declarations.

II.     **EXCLUSIONS**

A.      **Applicable to Coverages A, B, and C**:

1)  This policy does not apply to punitive damages, exemplary damages, multiplied damages, fines or penalties.  However, this insurance will apply to punitive damages where allowable by law.

2)  This policy does not apply to **cleanup costs**, **claims**, or defense expense:

a)  Arising out of or related to **pollution conditions** existing prior to the inception of this policy, and reported to any officer, director, partner or other employee responsible for environmental affairs of the named insured.  This exclusion does not apply to **pollution conditions** disclosed to the company prior to the inception of this policy and scheduled by endorsement.

b)  Based upon or arising out of the liability of others assumed by an Insured under any contract or agreement, unless the liability of such Insured would exist in the absence of a contract or agreement.

c)  Arising out of or related to **pollution conditions** which result from the use, ownership, operation, maintenance or entrustment to others of any **auto**, aircraft, watercraft, or rolling stock owned or operated by, or leased, rented or loaned to any Insured.

This exclusion shall not apply to pollution conditions which:

i)      Occur during loading or unloading operations performed at your **site(s); or**

ii)     Commence during the transportation of **your product** or wastes by a **carrier**; and

iii)    Result in **bodily injury**, **property damage**, or **cleanup costs** during the transportation of **your product** or wastes; and

iv)     Commence on or after the inception of this policy.

No coverage is provided for the mis-delivery of any liquid product by **auto**, aircraft, watercraft, or rolling stock.

d)  Arising out of or related to **pollution conditions** at, on, under or migrating from any **site(s)** that first commence after such property is sold, given away, abandoned or condemned.

e)  Arising out of or related to the presence of asbestos or any asbestos-containing products, fibers, or asbestos dust, unless specifically endorsed onto this policy.

f)  Arising out of or related to an Insured's intentional, willful or deliberate non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order or instruction of any governmental or public agency or body either before or after policy inception.

g)  Arising out of or related to any **bodily injury** to an **employee** or **executive officer** of any Insured or any parent, subsidiary or affiliate thereof arising out of and in the course of: (i) employment by such Insured or its parent, subsidiary or affiliate; or (ii) performing

duties related to the conduct of the business of the Insured or its parent, subsidiary or affiliate.

This exclusion will apply whether the Insured may be liable as an employer or in any other capacity, and will apply to any obligation on the part of the Insured to share damages with or repay someone else who must pay damages because of the **bodily injury**.  In addition, this exclusion will apply to any **claim** by a spouse, child, parent, brother or sister of an **employee** based upon or arising out of **bodily injury** to such **employee**.

h)   Arising out of or related to any obligation of any Insured under a workers compensation, disability benefits, unemployment compensation, employee benefits, pension, profit sharing, or ERISA law or any similar law.

i)   Arising out of or related to **pollution conditions** which result from the existence of any underground storage tank(s) or associated piping at the Insured's **site(s)**, but only if the existence of the underground storage tank(s) or associated piping is known by any Insured prior to the effective date of this policy.  This exclusion will not apply to underground storage tank(s) or associated piping when endorsed onto this policy.

j)   Based upon or arising out of any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot, or civil commotion.

**B.**   **Applicable to Coverage A only**:

This policy does not apply to **cleanup costs**:

1)   Arising out of or related to or in connection with any **capital expenditure** or improvement to or at your **site(s)** unless the **pollution condition** was discovered in the process of incurring any **capital expenditure** or performing improvement to or at your **site(s)**.

2)   Arising out of or related to the existence, required removal or abatement of lead paint unless specifically endorsed onto this policy.

**C.**   **Applicable to Coverages B and C only**:

This policy does not apply to **claims**:

1)   Against any Insured by any other Insured or former Insured under this policy.

2)   Arising out of or related to **pollution conditions** at, on, under or migrating from any location to which the Insured has sent waste materials for treatment, storage or disposal, unless such disposal **site(s)** are designated on the Declarations Page or by endorsement.

3)   Arising out of **your product** or **your work** away from your **site(s)**.

**III.**   **WHO IS AN INSURED**

**A.**   If the **Named Insured** is designated in the Declarations as:

1) An individual, the **Named Insured** and his or her spouse are Insureds, but only with respect to the conduct of a business of which the Named Insured is the sole owner.

2) A partnership or joint venture, the **Named Insured** is an Insured.  Its members, its partners, and their spouses are also Insureds, but only with respect to the conduct of the **Named Insured's** business.

3) A limited liability company, the **Named Insured** is an Insured.  Its members are also Insureds, but only with respect to the conduct of the **Named Insured's** business.  Its managers are Insureds, but only with respect to their duties as the **Named Insured's** managers.

4) An organization other than a partnership, joint venture, or limited liability company, the **Named Insured** is an Insured.  Its **executive officers** and directors are Insureds, but only with respect to their duties as officers or directors.

B. Each of the following is also an Insured:

1) The Insured's **employees**, other than either its **executive officers** (if it is an organization other than a partnership, joint venture, or limited liability company) or its managers (if it is a limited liability company), but only for acts within the scope of their employment by the Insured or while performing duties related to the conduct of the Insured's business.

2) Any person (other than the Insured's **employee**), or any organization while acting as the Insured's real estate manager.

3) Any person or organization having proper temporary custody of the Insured's **site(s)** if the Insured dies, but only:

a) With respect to liability or **cleanup costs** arising out of the maintenance or use of the Insured's **site(s)**; or

b) Until the Insured's legal representative has been appointed.

4) The Insured's legal representative if he or she dies, but only with respect to duties as such.  That representative will have all of the Insured's rights and duties under this policy.

## IV.   NOTICE REQUIREMENTS

As a condition precedent to the Insured's rights to coverage under this Policy, the Insured must give the Company notice of **pollution conditions** or **claims** as follows:

A. If **pollution conditions** are discovered during the **policy period**, or if a **claim** is made during the **policy period** or, if applicable, during an Extended Reporting Period, the Insured must give written notice to the Company as soon as practicable, but in no event later than thirty (30) days thereafter, sufficient to identify such Insured and reasonably obtainable information with respect to:

1) The identity of the **site(s)** at issue, a description of the **pollution conditions** (including the time, place, cause, and nature thereof and other circumstances relating thereto), and all persons with relevant knowledge thereof.

2) Any and all information developed or discovered by the Insured regarding any **claim**, including all correspondence between the Insured and any claimant; all demands, summonses, notices or other processes, complaints or papers regarding such **claim** filed with any court, administrative agency or investigative body; all technical reports, laboratory data, field notes, or any other documents generated by persons hired by the Insured to investigate or remediate any **pollution conditions**; and all relevant expert reports, investigations, and data collected by experts retained by the Insured, whether or not the Insured intends to use the material for any purpose.

B.   The obligation of the Insured to comply with this notice provision will not be excused if the Company becomes aware of **pollution conditions** through any independent means.

## V.    RIGHTS OF THE COMPANY AND DUTIES OF THE INSURED

A.        **The Company's Rights**:

1) After receiving notice in conformity with Section IV above, the Company will have the right, but not the duty, to clean up or mitigate any **pollution conditions** of which it has been given notice.

2) The Company will have the right, but not the duty, to review and approve all aspects, including any and all contemplated actions, of any **cleanup** as described in this policy.

3) Any amounts expended by the Company in the **cleanup** or mitigation of **pollution conditions** of which it has been given notice will be applied against the applicable Limit of Liability and deductible set forth in the Declarations.

B.        **The Insured's Duties**:

1) The **Named Insured** will have the duty to retain competent professionals or contractors mutually acceptable to the Company and the **Named Insured** to clean up **pollution conditions**.  The **Named Insured** must promptly notify the Company of actions and measures taken pursuant to this Section.

2) The Insured must cooperate with the Company and offer all reasonable assistance in the investigation and defense of any **claim** or **cleanup** of **pollution conditions**.  At the Company's request, the Insured must submit to examination under oath, attend hearings, depositions and trials, provide written statements and/or attend meetings with the Company.   The Insured must also assist the Company in effecting settlements, securing and providing documents or other evidence and obtaining the attendance of witnesses.

3) The Insured may incur no costs, charges or expenses in the defense or investigation of any **claim** or discovery of **pollution conditions** without the Company's written consent, which shall not be unreasonably withheld.  No Insured may voluntarily enter into any settlement or make any payment or assume any obligation without the Company's written consent, unless the Insured does so:   (a) in response to an **emergency situation** which requires an immediate response to **pollution conditions**, (b) pursuant to federal, state and/or local law which requires immediate response to **pollution conditions**, or (c) at its own cost.

4) If an Insured is entitled by law to choose independent legal counsel at the Company's expense, then any and all such expenses associated with such independent legal counsel's defense of the Insured shall be limited to the then-prevailing rates the Company pays its

own legal counsel to defend a similar action or proceeding under Coverage B and/or Coverage C in the jurisdiction where such action or proceeding is pending.

In addition, the Company shall require, and the Insured shall have the duty to ensure, that such independent legal counsel have certain minimum qualifications with respect to their competency, including experience in defending actions or proceedings similar to the action or proceeding pending against the Insured, and that such counsel has errors and omissions coverage.

Also, the Insured shall have the duty to ensure that such independent legal counsel cooperate with the Company in the defense of any such action or proceeding, including but not limited to, timely responding to the Company's requests for status reports and immediately providing the Company any and all non-privileged information that it may request.

The Insured may at any time, by written notice to the Company, waive its right to choose independent legal counsel.

## VI.    LIMITS OF LIABILITY AND DEDUCTIBLE

The Company's obligations under this Policy are subject to the following, regardless of the number of **claims**, claimants, **pollution conditions**, or Insureds under this policy:

A.    **Policy Aggregate Limit**:

The Company's maximum liability under this policy for all **cleanup costs**, **claims**, **bodily injury**, **property damage**, and defense expense will not exceed the policy's General Aggregate Limit of Liability set forth in the Declarations.

B.    **Each Pollution Condition Limit**:

Subject to and included in the limit of liability described in Section VI. A. above, the Each Pollution Condition Limit set forth in the Declarations is the maximum amount the Company will pay for all **cleanup costs**, **claims**, **bodily injury**, **property damage**, and defense expense arising from the same, continuous or related **pollution conditions**.

**Related Pollution Conditions**:

If an Insured discovers **pollution conditions** at, on or under a **site** during the **policy period** and reports such discovery to the Company pursuant to Section IV of this policy, all continuous or related **pollution conditions** discovered and reported to the Company under a subsequent policy or policies issued by the Company or an affiliate thereof providing coverage substantially the same as the coverage afforded under this policy will be treated as if they were discovered and reported to the Company during this **policy period**.  There will be no coverage under this policy, however, for such subsequently discovered **pollution conditions** unless, at the time of such subsequent discovery, the **Named Insured** has maintained with the Company or an affiliate thereof coverage substantially the same as the coverage afforded under this policy on a continuous, uninterrupted basis since the initial discovery of **pollution conditions**.  All **cleanup costs** arising from such continuous or related **pollution conditions** will be subject to the Each Pollution Condition Limit applicable when the original **pollution conditions** were discovered and reported.

If a **claim** is made against an Insured and reported to the Company pursuant to Section IV, all **claims** arising from the same, continuous or related **pollution conditions** made against an Insured and reported under a subsequent policy or policies issued by the Company or an affiliate thereof providing coverage substantially the same as the coverage afforded under this policy will be treated as if they were first made and reported during this **policy period**.  There will be no coverage under this policy for such **claims**, however, unless at the time such **claims** are subsequently made and reported the **Named Insured** has maintained with the Company or an affiliate thereof coverage substantially the same as the coverage afforded under this policy on a continuous, uninterrupted basis since the first such **claim** was made and reported to the Company.  All liability of the Company for **cleanup costs**, **bodily injury**, **property damage**, and defense expense arising from such **claims** will be subject to the Each Pollution Condition Limit applicable when the first of such **claims** was made and reported.

**C.**     **Deductible**:

Subject to Sections VI. A. and VI. B. above, this policy will pay the amount of covered **cleanup costs**, damages resulting from **claims** for **bodily injury** or **property damage**, and defense expense, as the case may be, that exceeds the deductible amount set forth in the Declarations, up to but not exceeding the Each Pollution Condition Limit set forth in the Declarations.  A single deductible amount will apply to all **cleanup costs**, **claims**, **bodily injury**, **property damage**, and defense expense arising from the same, continuous or related **pollution conditions**.   The Company has the right, but not the obligation, to make any payments associated with **cleanup costs**, **claims**, **bodily injury**, **property damage**, or defense expense within the amount of the applicable deductible if the Company, in its discretion, deems it advisable to do so.  If the Company exercises this right, the Insured must promptly, but in no event later than thirty (30) days, reimburse the Company for any payments made by the Company within the amount of the applicable deductible.

**VII.**     **DEFINITIONS**

A.     **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.   **Auto** does not include **mobile equipment**.  However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

1)   Equipment designed primarily for snow removal, road maintenance other than construction or resurfacing, or street cleaning;

2)   Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

3)   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

B.     **Bodily injury** means physical injury, sickness or disease sustained by a person, including death resulting from any of these at any time, including mental anguish or emotional distress which arises out of physical injury.

C.     **Capital Expenditure** means funds spent for additions or improvements to your plant or equipment for voluntary reasons or to comply with the requirements of any regulatory agency to prevent future **pollution conditions**.

D. **Carrier** means a person or entity, other than the insured or any subsidiary or affiliated company of the insured, engaged in the business of transporting property for hire by **auto**, rolling stock, aircraft or watercraft.

E. **Claim** means a written request or demand received by an Insured for money or services, including the institution of a **suit** or arbitration proceedings against an Insured seeking damages.  **Claim** includes any directive, order, requirement, court order or **suit** of the government of the United States or Canada or any local, State, or Provincial Government entity of the United States of America or Canada duly acting under the authority of environmental or related laws.

F. **Cleanup** means the investigation, evaluation, monitoring, testing, removal, containment, treatment, disposal, remediation, detoxification or neutralization of **pollutants** to the extent required by Federal, State, Local or Provincial Laws, including but not limited to statutes, rules, ordinances, guidance documents, regulations, and all applicable amendments thereto, including state voluntary cleanup or risk based corrective action guidelines.

G. **Cleanup costs** mean the expenses incurred to perform a **cleanup**.  **Cleanup costs** do not include **capital expenditures**. **Cleanup costs** include **restoration costs**.

H. **Coverage territory** means:

   1) The United States of America (including its territories and possessions), Puerto Rico and Canada;

   2) International waters or airspace, provided that injury or damage does not occur in the course of travel or transportation to or from any place not included in 1. above.

I. **Emergency situation** means an unforeseen event that calls for immediate action to prevent or mitigate **pollution conditions**.

J. **Employee** includes temporary and leased staff working on behalf of and under direct supervision of an Insured, but only for **your work**.

K. **Executive officer** means a person holding any of the officer positions created by your charter, constitution, by-laws or similar governing document.

L. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

   1) Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads.

   2) Vehicles maintained for use solely on or next to premises you own or rent.

   3) Vehicles that travel on crawler treads.

   4) Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      a) power cranes, shovels, loaders, diggers or drills; or

      b) road construction or resurfacing equipment such as graders, scrapers or rollers.

      c) Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

i) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

ii) cherry pickers and similar devices used to raise or lower workers.

iii) Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

M.  **Named Insured** means the person(s) or entity (ies) identified as such in the Declarations or by endorsement.

N.  **Policy period** means the period set forth in the Declarations, or any shorter period upon **termination of coverage**.

O.  **Pollutant(s)** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis or toxic chemicals, and includes waste.

P.  **Pollution conditions** mean the discharge, dispersal, seepage, migration, release or escape of **pollutants**.

Q.  **Property damage** means:

1)  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2)  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **pollution condition** that caused it; or

3)  **Cleanup costs**; or

4)  Diminished third party property value.

5)  Physical injury to or destruction of, including the resulting loss of value of, land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States, any state or local government, any fopreign government, any Indian tribe, or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe.

R.  **Restoration costs** means reasonable and necessary costs incurred by the **insured** with the Company's consent, which shall not be unreasonably withheld, to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during work performed in the course of incurring **cleanup costs.** However such **restoration costs** shall not exceed the appraised value of such property immediately prior to the **pollution conditions** giving rise to such cleanup costs or include costs associated with improvements or betterments.

S.  **Site(s)** means the specific location(s) designated on the Declarations Page or by endorsement onto the policy.

T.  **Suit** means a civil proceeding in which damages because of any acts, errors or omissions to which this insurance applies are alleged. **Suit** includes:

1) An arbitration proceeding in which such monetary damages are claimed and to which the Insured must submit or does submit with our consent; or

2) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

U. **Termination of coverage** occurs at the time of cancellation or nonrenewal of this policy by the **Named Insured** or by the Company, or at the time the Company deletes a previously covered site.

V. **Your product** means:

1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

a) You;

b) Others trading under your name; or

c) A person or organization whose business or assets you have acquired.

2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

2) The providing of or failure to provide warning or instructions.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

W. **Your work** means:

1) Work or operations performed by you or on your behalf; and

2) Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes:

1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

2) The providing of or failure to provide warnings or instructions.

## VIII.   EXTENDED REPORTING PERIOD – COVERAGES B AND C

Upon **termination of coverage**, the **Named Insured** will be entitled to an Automatic Extended Reporting Period, and with certain exceptions as described in paragraph B. below, will also be entitled to purchase an Optional Extended Reporting Period, applicable only to Coverages B and C.  Any Extended Reporting Period provided hereunder will only apply to a **claim** arising from **pollution conditions** that commenced prior to the end of the **policy period** and which are otherwise covered by this policy.  If there is a **termination of coverage** for less than all of the Insured's **sites**, the Extended Reporting Provisions will apply with respect to those **site(s)** for which coverage was terminated.   Neither the Automatic nor the Optional Extended

Reporting Period will operate to reinstate or increase the Limits of Liability stated in the Declarations.  Any **claim** first made and reported within either the Automatic or Optional Extended Reporting Period will be treated as if it had been made during the **policy period**.  The Automatic Extended Reporting Period will not be applicable if the **Named Insured** exercises its option to purchase the Optional Extended Reporting Period.  Neither Extended Reporting Period shall be available to the Insured in the event of nonpayment of premium.

A.   **Automatic Extended Reporting Period:**

Upon **termination of coverage,** the **Named Insured** will be entitled to an Automatic Extended Reporting Period which will be in effect for the period of sixty (60) days after **termination of coverage** as defined herein or until the effective date of any insurance purchased by the **Named Insured** to replace this insurance, whichever is earlier.

B.   **Optional Extended Reporting Period:**

Upon **termination of coverage**, the **Named Insured** will be entitled to purchase an Optional Extended Reporting Period.

The Company will issue an endorsement providing an Extended Reporting Period of up to sixty (60) months from **termination of coverage** hereunder applicable to any insured property, provided that the **Named Insured**:

1)   makes a written request for such endorsement which the Company receives within thirty (30) days after **termination of coverage** as defined herein; and

2)   pays the Company an additional premium charge determined by the Company within thirty (30) days of **termination of coverage** as defined herein.  Such additional premium charge may not exceed 200% of the policy premium stated in the Declarations, as the same may have been adjusted from time to time.

If the additional premium is paid when due, the Extended Reporting Period may not thereafter be cancelled, provided that all other terms and conditions of the policy are met.

IX.   **CONDITIONS**

A.   **Assignment**: This policy may be assigned only with the prior written consent of the Company.  If the **Named Insured** conveys fee title to a covered **site(s)** and notifies the Company, in writing, within forty-five (45) days thereof, the Company's consent to assign this policy to a purchaser of such insured property shall not be unreasonably withheld.

B.   **Subrogation**:  In the event of any payment under this policy, the Company will be subrogated to all of the Insured's rights of recovery therefore against any person or organization, and the Insured must execute all documents and do whatever else may be necessary to secure such rights, including without limitation executing assignments of the Insured's rights against any person or organization responsible for any **pollution conditions** on account of which the Company made any payment under this policy.  The Insured shall do nothing to prejudice the Company's rights or position under this Section IX. B.  Any recovery as a result of subrogation proceedings arising out of the payment of **cleanup costs**, damages resulting from claims for **bodily injury** or **property damage**, or defense expense will accrue first to the Insured to the extent of any payments by them in excess of the limit of coverage, and then to the Company to the extent of its payment under the policy, and finally to the Insured to the extent of the applicable deductible.  Expenses incurred in such subrogation

proceedings will be apportioned among the parties interested in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

C.    **Changes**:  No notice to any agent of the Company or knowledge possessed by any such agent or by any other person will effect any waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor may the terms of this policy be waived or changed, except by endorsement issues to form a part of this policy.

D.    **Sole Agent**:  The **Named Insured** first listed in the Declarations will act on behalf of all other Insureds, if any, with respect to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this policy, giving and receiving of notice of cancellation or nonrenewal, and the exercise of the rights provided in Section VIII above.

E.    **Concealment or Misrepresentation**:  Whether or not **cleanup costs** have been incurred, **pollution conditions** have been discovered, or a **claim** has been made, this entire policy will be void if the **Named Insured** has concealed or misrepresented any fact or circumstance material to the granting of coverage under this policy or the interest of the Insured therein.

F.    **Cancellation**:

1)    The **Named Insured** may cancel this policy by surrendering it to the Company or to any of the Company's authorized agents, or by mailing to the Company written notice stating when thereafter such cancellation will be effective.

2)    The Company may cancel this policy by mailing to the **Named Insured**, at the address set forth in the Declarations, written notice stating when, not less than thirty (30) days (ten (10) days for nonpayment of premium) thereafter, such cancellation will be effective.  Proof of mailing of such notice shall be sufficient proof of notice.

3)    The time of surrender or the effective date and hour of cancellation stated in the notice will become the end of the **policy period**.  Delivery of such written notice by the Company will be equivalent to mailing.

G.    **Other Insurance**:  Where other insurance may be available to the Insured for **cleanup costs**, **claims**, **bodily injury**, **property damage**, or defense expense covered under this policy, the Insured shall promptly upon the request of the Company provide the Company with copies of all such insurance policies.  If any other insurance is available to any Insured, the Company's obligations are limited as follows:

1)    This insurance is primary, and the Company's obligations are not affected unless any of the other insurance is also primary.  In that event, the Company will share with all such other insurance by the method described in paragraph 2. below.

2)    If all of the other insurance permits contribution by equal shares, the Company will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.  If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits.  Under this alternative method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all primary insurers.

H.    **Right of Access and Inspection**:  The Company and its authorized representatives will, when the Company so desires, have the right and opportunity, but not the obligation, to interview persons employed by any Insured and to inspect at any reasonable time, during the **policy period** or

thereafter, any insured property and all improvements, structures, products, ways, works, machinery and appliances thereon; but neither the Company nor its representatives will assume any responsibility or duty to any Insured or to any other party, person or entity by reason thereof. Neither the Company's right to make inspections, sample and monitor, nor the actual undertaking thereof, nor any report thereon will constitute an undertaking, on behalf of any Insured or others, to determine or warrant that property or operations are safe or conform to acceptable practices or comply with any applicable law, rule or regulation. The **Named Insured** will provide appropriate personnel to assist the Company's representatives during any inspection without charge to the Company.

I.      **Access to Information**:  The Insured will provide to the Company any and all information they develop or discover concerning **cleanup costs** for **pollution conditions** covered under this policy, whether or not they deem such information to be relevant to such **cleanup costs**, and they will provide the Company free access to interview any agent or **employee** and review any documents of the Insured.

J.      **Representations**:  By acceptance of this policy, the **Named Insured** agrees that the statements in the application are their agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between the **Named Insured** and the Company or any of its agents relating to this insurance.

K.      **Action Against Company**:  No action will lie against the Company unless, as a condition precedent thereto, there has been full compliance with all of the terms of this policy, nor until the amount of the Insured's obligation to pay has been finally determined either by judgment against the Insured after actual trial or by written agreement among the Insured, the claimant and the Company.  Any person or organization or any legal representative thereof who has secured such judgment or written agreement will thereafter be entitled to recover under this policy to the extent of the insurance afforded by the policy.  No person or organization will have any right under this policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor may the Company be impleaded by any Insured to his, her or its legal representative.  Bankruptcy or insolvency or an Insured or of an Insured's estate will not relieve the Company of any of its obligations hereunder.

L.      **Severability:**  Except with respect to the Limits of Liability and any rights or duties specifically assigned to the **Named Insured**, this insurance applies as follows:

1)   As if each Insured were the only Insured; and

2)   Separately to each Insured against whom a **claim** is made or **suit** is brought.

M.      **Material Change in Operations**:  The Insured must notify the Company, in writing, within sixty (60) days, of any change in operations at an insured property that materially increases environmental risk described in the application and in other documents disclosed to the Company prior to the **policy period**.

N.      **Choice of Law and Forum**:  In the event that the Insured and the Company dispute the validity of formation of this policy or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or any other form of dispute resolution, the Insured and the Company agree that the laws of the State of New York shall apply and that all litigation, arbitration or other form of dispute resolution shall take place in the State of New York.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its president and secretary and signed on the Declarations page by a duly authorized representative or countersigned in states where applicable.

**TRANSPORTATION OF CARGO – POLLUTION ENDORSEMENT**

This endorsement, effective attaches to and forms a part of the Policy.

This endorsement changes the Policy.  Please read it carefully.

This endorsement modifies insurance provided under the following:

**POLLUTION LIABILITY COVERAGE**

In consideration of an additional premium in the amount of $ INCLUDED   it is hereby agreed that Exclusion A.2.c) is deleted and replaced with the following:

Arising out of or related to POLLUTION CONDITIONS which result from the use, ownership, operation, maintenance or entrustment to others any AUTO, watercraft, or rolling stock owned or operated by, or leased, rented or loaned to any Insured.

The exclusion shall not apply to POLLUTION CONDITIONS which:

    i)        resulting from the release from a COVERED AUTO and emanating from the TRANSPORTED CARGO.

    ii)       occur during loading or unloading operations or;

    iii)     commence during the transportation of YOUR PRODUCT or wastes by a CARRIER; and

    iv)     result in BODILY INJURY, PROPERTY DAMAGE, or CLEANUP COSTS during the transportation of YOUR PRODUCT or wastes; and

    v)      commence on or after the inception of this policy.

No coverage is provided for the WRONGFUL DELIVERY of any liquid product by AUTOMOBLE, aircraft, watercraft or rolling stock.

The following definitions are added to this policy:

**II. DEFINITIONS**

    A.      COVERED AUTO means the following provided they are indicated with an "X".

    _____Specifically described AUTOS  listed below in the Schedule of AUTOS.

       X_____Owned AUTOS only.  Only those AUTOS the INSURED owns (and any trailers the INSURED does not own while connected to a power unit the INSURED owns).  This includes those AUTOS the INSURED acquires ownership of after the policy begins.

   X      Hired AUTOS only.  Only those AUTOS the INSURED leases, hires, rents or borrows.  This does not include any private passenger type AUTO the INSURED leases, hires, rents or borrows from the INSURED, any of its employees, partners or agents.

   X      Non-owned AUTOS only.  Only those AUTOS the INSURED does not own lease, hire, rent or borrow that are used in connection with the INSURED(S) business.  This includes AUTOS owned by employees or partners or members of their households but only while used in the INSURED(S) business.

B.     CARGO means goods, products or wastes carried for delivery on or within a COVERED AUTO that is properly licensed to transport such goods, products or wastes.

C.     CARRIER means a person or entity, other than the INSURED or any subsidiary or affiliated company of the INSURED, engaged in the business of transporting property for hire by AUTO, rolling stock, aircraft or watercraft.

D.     TRANSPORTED CARGO means CARGO after it is moved from the place where it is accepted for movement into or on to the COVERED AUTO, until the CARGO is moved from the COVERED AUTO to the place where it is finally delivered.  TRANSPORTED CARGO also includes CARGO during the loading and unloading to or from a COVERED AUTO, provided that the loading or unloading is performed by the INSURED.  TRANSPORTED CARGO does not include CARGO at rest for a period of longer than seventy-two (72) hours, after it has been accepted for movement into or onto a COVERED AUTO but before it reaches the place of final delivery.

E.     WRONGFUL DELIVERY means the delivery of any CARGO into the wrong receptacle or to the wrong address, or the delivery of one type of CARGO in error for another.

| SCHEDULE OF AUTOS | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATION OF SURPLUS LINES AGENT

It is agreed that the Surplus Lines Agent with respect to this policy is as follows:

<u>Surplus Lines Agency</u>

Beecher Carlson

## RELIANCE UPON OTHER CARRIER'S APPLICATION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is agreed that the following provision is added to the **CONDITIONS, Representations** section of the policy:

**RELIANCE UPON OTHER CARRIER'S APPLICATION**

In the absence of an application from the company providing this insurance, the Insurer has relied upon the statements, representations, warranties (if any) and information contained in the application referenced below (including any materials submitted therewith and attachments submitted thereto, and, if such application is a renewal application, all previous policy applications for which this policy is a renewal or succeeds in time, and any materials submitted therewith and attachments submitted thereto as being accurate and complete (all such applications and materials are collectively referred to hereinafter as "Policy Application"). It is agreed that the Insured represents to the Insurer that the statements, representations, warranties (if any) and information contained in the Policy Application were accurate on the date they were so given. The Insured hereby reaffirms each and every statement, representation and warranty (if any) made in the Policy Application to the insurance carrier listed below as accurate as of the effective date such statement, representation and warranty was made as if they were made to the Insurer on such date. All such statements, representations, warranties (if any) and information shall be deemed to be material to the acceptance of the risk or hazard assumed by the Insurer, are the basis of this policy and are incorporated into and constitute a part of this policy.

All other terms, conditions and exclusions under this policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**AMENDATORY ENDORSEMENT**

**TCPA EXCLUSION**

In consideration of the premium charged, it is hereby understood and agreed that the insurance provided by this Policy does not apply to any **Claim** based upon or arising directly, or indirectly, out of any actual or alleged violation of the following:

1. The Telephone Consumer Protection Act (TCPA), including any amendment or addition to such law;
2. The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), including any amendment or addition to such law;
3. The Fair Credit Reporting Act (FCRA), including any amendment or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA);
4. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information; or
5. Any other law, ordinance, regulation or statute relating to any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

In addition, this insurance does not apply to **Claims** asserted under the common law which are alleged to arise out of the distribution, publication, sending or transmission of material or information via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

All other policy Terms and Conditions remain unchanged.

PGI PL 074 1212

**NON-OWNED DISPOSAL SITE LIABILITY COVERAGE ENDORSEMENT (BLANKET)**

This endorsement changes the Policy. Please read it carefully.

In consideration of the premium charged, it is hereby agreed that the Site Pollution Liability Policy,
 **I. Insuring Agreements**, **Coverage A – Onsite Cleanup** is amended by the addition of the following:

4) The Company will pay **cleanup costs** that result from **pollution conditions** arising from the insured's liability as a result of the disposal of wastes or waste materials at the SCHEDULED NON-OWNED DISPOSAL SITE(S).

It is also agreed that the Site Pollution Liability Policy, **I. Insuring Agreements**, **Coverage B – Third Party Claims** is amended by the addition of the following:

4) The Company will pay **claims** for **bodily injury** or **property damage** that result from **pollution conditions** arising from the insured's liability as a result of the disposal of wastes or waste materials at the SCHEDULED NON-OWNED DISPOSAL SITE(S).

## <u>SCHEDULED NON-OWNED DISPOSAL SITE(S)</u>

Any waste disposal facility not owned or operated by the insured which at the time the waste, products or materials were delivered to the site:

1) was licensed in the state where they operate

2) was in compliance with the requirements of Title 40 of the United States Code of Federal Regulations and any similar or comparable State regulations

3) was not listed on the National Priorities List ("NPL") or any similar or comparable state list.

PGI EL 055 0915

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**UNDERWRITERS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**Env Package**

In consideration of the premium charged, it is hereby agreed and understood that any reference to Underwriters within the policy form shall mean:

      Certain Underwriters at Lloyd's and International Insurance Company of Hannover SE

All other policy terms and conditions remain unchanged.



# POLLUTION LEGAL LIABILITY
# INSURANCE APPLICATION

## PLEASE ANSWER ALL QUESTIONS COMPLETELY

**NOTICE:** If a policy is issued, the limit of liability available to pay judgments for settlements shall be reduced by amounts incurred for legal defense.  Further note that amounts incurred for legal defense shall be applied against the deductible or retention amount.

**ALL APPLICANTS MUST SUBMIT THE FOLLOWING INFORMATION IN ADDITION TO THE APPLICATION:**

1. Copies of all environmental audit or assessment reports that have been conducted within the past three years.

2. Most recent income statement and balance sheet.

3. Five years of valued loss runs, if applicable.

### I.   APPLICANT INFORMATION

| | |
|---|---|
| **Insured:** Calistoga Ranch | **Date:** 10/30/17 |
| **Address:** 580 Lommel Road | **Phone:** 707-254-2841 |

| City: Calistoga | State: CA | Zip Code: 94515 | E-Mail: michael.petherbridge@aubergeresorts.com |
|---|---|---|---|

**Company is:** ☐ Individual   ☐ Partnership   ☑ Corporation   ☐ Joint Venture   ☐ Other_____
*(please describe)*

### II.   REQUESTED COVERAGE

1. Coverage Requested:

   ☐ New Business   ☐ Renewal

   ☐ Third Party Pollution Liability   ☐ Transportation Pollution

   ☐ On-Site Cleanup   ☐ Non-Owned Disposal Site Coverage

4. Other Coverages and Endorsements: _____

5. Have you ever had site pollution coverage before?   ☐ Yes   ☐ No

   If so, please provide coverage dates: _____ - _____

2. Proposed Effective Date: _____

   Proposed Retroactive Date: _____

3. Limits Of Liability/Deductible:

   Limits Requested: _____

   Deductible Requested: _____

   -- or --

   SIR requested: _____

### III.   DESCRIPTION – Please complete the following for all locations you wish to be covered.

| LOCATION | ACREAGE | DESCRIPTION OF CURRENT OPERATIONS | LENGTH OF OPERATIONS |
|---|---|---|---|
| 1.  580 Lommel Road | 570 | Hotel, HOA, restaurant, spa | 14 years |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

### IV.   DESCRIBE CURRENT OPERATIONS:

Luxury hotel, restaurant, spa, HOA.

### V.   LIST ALL STRUCTURES ON THE PROPERTY:

## VI. ARE THERE ADDITIONAL OCCUPANTS ON THIS PROPERTY (OWNED OR LEASED):

■ Yes   ☐ No     If yes, please list below

Calistoga Ranch Club. owned.

## VII. PROVIDE SITE HISTORY INCLUDING ALL PAST LAND USE AND THE TIME PERIOD FOR EACH OPERATION:

2004 - Current - Hotel and HOA

Prior to 2004 - Campground

## VIII. HAS THERE EVER BEEN ANY STORAGE OR DISPOSAL PRACTICES AT THE SITE INCLUDING ANY ON SITE DISPOSAL? If so, please explain in detail below:

No

## IX. PRIOR LIABILITY CARRIER INFORMATION

| 1. Coverage Form | 2. Carrier | 3. Receipts | 4. Limit of Liability | 5. Deductible | 6. Policy Type | 7. Rate | 8. Premium |
|---|---|---|---|---|---|---|---|
| 1. | | | | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |

4. Has any policy or coverage been declined, cancelled and/or non-renewed during the prior three years?

☐ Yes (If yes, please explain): _____

☐ No

## X. HISTORY OF COMPANY

1. Date Company Was Established:   2004

| 2. Have there been any consolidations, dissolutions, acquisitions and/or mergers? | ☐ Yes<br>■ No | If yes, please explain: |
|---|---|---|
| 3. Does the firm have: | ☐ Subsidiaries<br>■ A parent company<br>☐ Other related entities | If so, please explain: Auberge Resorts |
| 4. Do you share employees? | ■ Yes<br>☐ No | If yes, please explain: Employees work between other hotels in the company. |

## XI. ANNUAL REVENUE – Provide revenue base from the following:

| | |
|---|---|
| $26,240,283 | Past Year 2016 |
| $21,836,038 | Current Year 2017 |
| $26,569,891 | Upcoming Estimate 2018 |

## XII. ENVIRONMENTAL INFORMATION:

| | Yes | No |
|---|---|---|
| 1. Has fill material ever been used at the property? | ☐ | ■ |
| 2. Has any remediation or monitoring of soil or groundwater ever taken place at the property? | ■ | ☐ |
| 3. Has there ever been any testing of soil, groundwater, surface water or air at the property? | ■ | ☐ |
| 4. Does the use of the property require any environmental permits? | ☐ | ■ |
| 5. Are there any plans to conduct any testing of soil, groundwater or surface water at the property? | ☐ | ■ |
| 6. Has any building structure been tested for lead-based paint, asbestos or radon? | ■ | ☐ |
| 7. Are there any dry wells, septic systems, leach field or oil/water separators at the property? | ■ | ☐ |

## XIII. HAZARDOUS WASTE AND MATERIALS

**Does this property generate, handle, store or dispose of any hazardous waste or materials?**  ☐ Yes  ☒ No

If yes, please complete the following:

1. Describe the disposal method used:

2. Type of hazardous waste or materials:

3. Describe the on site storage practices and storage areas:

## XIV. STORAGE TANKS

**Does this property presently have any storage tanks?**  ☒ Yes  ☐ No

If yes, please explain the tank inventory control program:  ## Propane Tank

| | AST/UST | Tank No. | Tank Construction | Tank Size (Gals.) | Age | Date of Installation | Contents | Secondary Containment | Date & Results of Last Testing |
|---|---|---|---|---|---|---|---|---|---|
| 1. | AST | 1 | | 17100 | 14yrs | 2004 | Propane | – | – |
| 2. | AST | 2 | | 250 | 14yrs | 2004 | Propane | – | – |
| 3. | | | | | | | | | |
| 4. | | | | | | | | | |
| 5. | | | | | | | | | |
| 6. | | | | | | | | | |
| 7. | | | | | | | | | |
| 8. | | | | | | | | | |

## XV. PROPERTY LOCATION

1. **Provide a description of adjacent properties:**
   a. **North:**  North - Private Land
   b. **South:**  South - Residential
   c. **East:**  East - Private Land
   d. **West:**  West - Private Land

2. **Identify any surface or groundwater uses in the area (drinking wells, etc.):** Drinking and Irrigation Wells

3. **Is public water and sewer available:** ☐ Yes  ☒ No

4. **Are there any protected environments in the area or sensitive receptors (parks, wildlife preserves, etc.) or school areas where children may frequent:** ☐ Yes  ☒ No
   If yes, please describe:

5. **Identify nearby surface water bodies including approximate distances (i.e. streams, lakes, wetlands):**
   Streams through the property, Lake Lommel

6. **Provide information on any mandated or voluntary monitoring performed at considered location (i.e. groundwater monitoring wells, NPDES, CAA, etc.):** Water treatment monitoring

## XVI. WASTE HANDLING

**Does your facility treat, process, separate or store any type of waste (i.e. liquid, solid, wastewater)?**  ☒ Yes  ☐ No

If yes, please complete the following:

1. Type of Waste: Trash, Compost
2. Describe the waste treatment operation: *Weekly pickups*
3. Maximum amount of waste processed per day:
4. Maximum amount of waste stored at any one time: *Standard dumpster*
5. Daily operating procedures in place?  ☒ Yes  ☐ No
6. Are emergency procedures in place?  ☐ Yes  ☒ No
7. Identify effluent discharge points for wastewater and storm water: *None*

## XVII. LANDFILL

**Do you now or have you ever had a landfill on site?**  ☐ Yes  ☒ No

If yes, please complete the following:

1. Acreage:  Active Landfill: _____  Closed Landfill: _____  Vacant Land: _____
2. Type of waste collected:

| 3. | Is the landfill lined? | ☐ Yes   ☐ No<br>Type of liner: _____<br>Material: _____<br>Thickness: _____ | | |
|---|---|---|---|---|
| 4. | Is there a leachate collection system in place? | ☐ Yes   ☐ No<br>Amount of leachate produced annually? _____ | | |
| 5. | Number of active groundwater monitoring wells in place? _____ Total _____ Up gradient _____ Down gradient | | | |
| 6. | Are daily operating procedures in place? | ☐ Yes   ☐ No | | |
| 7. | Are emergency procedures in place? | ☐ Yes   ☐ No | | |

### XVIII. VIOLATIONS

| 1. | Have you during the last five years received any violations regarding any standard or law relating to the release of a substance from the location(s) into sewers, rivers, air or onto land? | ☐ Yes | ■ No |
|---|---|---|---|
| | If yes, please provide the details: | | |
| 2. | If yes, have you ever been prosecuted? | ☐ Yes | ■ No |
| | If yes, please provide the details: | | |

### XIX. CLAIMS

| 1. | Please describe any pollution claims which have occurred during the last five years, (if none, please state so): | | |
|---|---|---|---|
| 2. | At the time of signing this application are you aware of any circumstances that may reasonably be expected to give rise to a claim under this policy? | ☐ Yes | ■ No |
| | If yes, please provide the details: | | |

**FRAUD WARNING: APPLICABLE TO ALL STATES**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**WARRANTY STATEMENT**

The signatory declares that (s)he is authorized by the Applicant to sign this application on behalf of all prospective *Insureds* and that to the best of his/her knowledge the statements herein are true.  The signatory agrees that if the information supplied in this application and the materials submitted therewith should change between the date this application is signed and the effective date of the proposed insurance, the signatory shall immediately notify the *Insurer* of such and shall provide the *Insurer* with information that would complete, update or correct the application or materials submitted therewith.  The *Insurer* may withdraw or modify any of the terms or conditions of coverage accordingly.

**NOTICE TO APPLICANTS:**  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning fact material thereto, commits a fraudulent insurance act, which is a crime.

Signature: _____   Date: _____

Print Name: _Michael Petherbridge_   Title: _Area Director of Finance_
on behalf of Cukstya
Ranch Owners LLC